**Darryl Lamar BEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00380–CR.**

Court of Appeals of Texas,
San Antonio.

April 22, 1998.

Vincent D. Callahan, San Antonio, for Appellant.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

STONE, Justice.

This appeal arises from Darryl Lamar Bee's jury conviction for murder. Following its determination of guilt, the jury sentenced Bee to 50 years' imprisonment. Bee appeals his conviction in one point of error contending that the trial court abused its discretion by allowing the introduction of prior statements by the State's witness, Darryl Mitch-

ell, who refused to testify after ordered by the court to do so.

In March 1997, Bee was tried for the offense of murder alleged to have occurred on July 13, 1995. During this trial, the State admitted testimony from Mitchell, who identified Bee and stated that Bee committed the crime charged. During cross-examination Bee charged Mitchell with recent fabrication and impeached Mitchell by raising the inference that he held improper motive to accuse Bee of the crime. On redirect examination, the State admitted Mitchell's written statement given to police during their investigation of the crime. In his written statement, provided under oath, Mitchell stated that Bee committed the crime charged. Mitchell testified on redirect examination that he made the written statement prior to the time when Bee accused him of forming a fabrication or improper motive and at a time when he considered Bee to be a friend. Bee cross-examined Mitchell regarding Mitchell's written statement and testimony. The trial ended in mistrial due to a hung jury.

A new trial began on April 7, 1997. During the second trial, Mitchell refused to testify, invoking his Fifth Amendment privilege against self-incrimination. After being advised by appointed counsel that he did not hold such right because he was not charged with the crime being tried, Mitchell refused to testify. The trial judge ruled that Mitchell waived any Fifth Amendment rights when he testified in the first trial, advised Mitchell that he would be held in contempt of court if he refused to testify, and advised Mitchell of the consequences of a contempt order. Mitchell refused to testify. The trial judge ordered Mitchell to testify, and Mitchell still refused. The trial judge then held Mitchell in contempt of court.

The State moved to admit into evidence Mitchell's prior testimony from the first trial. Bee objected, contending that after Mitchell's testimony in the first trial, Bee learned of additional exculpatory statements made by Mitchell, and he planned to cross-examine Mitchell concerning these statements during the second trial. The trial court allowed the prior testimony under TEX.R. EVID. 804(b)(1)[1] as an exception to the hearsay rule. Over Bee's objections, including that the evidence was hearsay, the State read to the jury Mitchell's complete trial testimony from the previous trial, including the cross-examination, redirect examination, and re-cross-examination. Later, the State moved to admit into evidence Mitchell's written statement attesting that Bee committed the murder by having another witness, the investigating officer, read it. Bee objected to the admission of the written statement on the basis of hearsay. The State explained that it sought to introduce the written statement as in the previous trial under Rule 801(e)(1)(B) to rebut the charge of recent fabrication and improper motive already read to the jury in the former testimony cross-examination. The trial court overruled the hearsay objection, finding exception under Rule 801(e)(1)(B). The State's witness read Mitchell's written statement. Bee cross-examined the State's witness.

Bee argues that the trial court abused its discretion by admitting Mitchell's previous written statement because it was inadmissable hearsay, not subject to any hearsay exception. Bee contends that the written statement was hearsay based on five reasons: (1) Bee did not cross-examine Mitchell about his written statement during the first trial; (2) the State failed to prove that the written statement was not hearsay as defined in Texas Rule of Evidence 801(e)(1); (3) the State assisted in making Mitchell unavailable to testify by failing to offer him immunity; (4) the State failed to show that Bee prevented Mitchell from testifying; and (5) the State failed to show that Mitchell's out of court statement fell within the hearsay exception as former testimony. In his third, fourth, and fifth arguments Mitchell impliedly argues that the former testimony, as well as the written statement, was not admissible under Rule 804(b)(1).[2] Although Bee does not specifically argue that the trial court abused its discretion by admitting Mitchell's former testimony, this court will liberally

---

1.  All cites to the Texas Rules of Evidence refer to the rules effective March 1, 1998.

2.  A "statement" is an oral or written verbal expression. TEX.R. EVID. 801(a).

construe the brief to address that point as well. *See Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990) (points of error should be construed liberally "in order to adjudicate justly, fairly and equitably the rights of the litigants.").

Hearsay is a written or oral statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(a), (d). Hearsay is inadmissable evidence unless expressly excepted or excluded from this general rule by statute or the rules of evidence. *Id.* at 802. Rule 801(e)(1) excludes a statement from the hearsay rule as "not hearsay" if it is a prior statement by a witness and "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

If a witness is unavailable to testify, his "[t]estimony given as a witness at another hearing of the same or a different proceeding" is excepted from the hearsay rule "if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *Id.* at 804(b)(1). A witness is unavailable to testify if he "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." *Id.* at 804(a)(2). However, a witness "is not unavailable as a witness if his exemption, refusal, ... or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying." *Id.* at 804(a).

### STANDARD OF REVIEW

■ Whether evidence comes in under one of the exceptions or exclusions to the hearsay rule is a question for the trial court to resolve and is reviewable for abuse of discretion. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). The appellate court should not conduct a de novo review; its role

is limited to determining whether the record supports the trial court's ruling. *Id.*

### *Witness Availability (Issues 3 & 4)*

■ Bee acknowledges that Daryl Mitchell was an unavailable witness. Therefore the issue whether Mitchell was unavailable to testify at the second trial based upon his refusal to do so against a court order is not contested. However, Bee asserts that Mitchell's absence or refusal to testify, making him unavailable, was due to the State's failure to offer immunity. Bee asserts that under Rule 804, the State's failure to offer Mitchell immunity made Mitchell available to testify at the second trial.

Bee's assertion is apparently derived from the rule that a witness claiming privilege against self-incrimination becomes unavailable to the defense only, for purposes of admission of former testimony; however, the witness remains available to the prosecution because the State has the power to grant immunity. *See Fuentes v. State*, 880 S.W.2d 857, 862 (Tex.App.—Amarillo 1994, pet. ref'd); *Reyes v. State*, 845 S.W.2d 328, 333 n. 4 (Tex.App.—El Paso 1992, no pet.). Bee's argument fails because Mitchell's unavailability was not induced by his invocation of his privilege against self-incrimination, but by his refusal to obey a court order to testify. Bee does not challenge on appeal the trial court's finding that Mitchell was not entitled to any Fifth Amendment privilege. Mitchell was advised that he did not hold a Fifth Amendment privilege against self-incrimination and, therefore, he violated a court order to testify by so refusing. Because Mitchell's unavailability was invoked by his independent refusal to comply with a court order, any offer of immunity by the State would have been improvident. Because Mitchell persisted in refusing to testify despite the trial court's order to do so, and after the trial court offered several opportunities to comply with its order, Mitchell became "unavailable" under Rule 804(a)(2). Therefore, Bee's third argument is without merit.

■ In his fourth argument, Bee contends that the State failed to show that Mitchell was unavailable by failing to show that Bee somehow prevented Mitchell from testifying.

Bee seems to argue that to prove Mitchell was unavailable to testify under Rule 804, the State was required to show that Bee somehow prevented Mitchell from testifying, making him "unavailable."

The issue whether Bee prevented Mitchell from testifying is irrelevant to the question whether Mitchell was unavailable to testify under Rule 804. *See* TEX.R. EVID. 804(a). While the rule does state that Mitchell would have been available if his refusal or absence was due to any wrongdoing of the proponent of the statement, i.e. the State; it does not require the State to prove that Mitchell's unavailability was procured by Bee's wrongdoing. *Id.* Therefore, Bee's fourth issue is without merit.

The trial court did not abuse its discretion by finding that Mitchell was unavailable to testify in the second trial under Rule 804(a)(2).

### Former Testimony (Issue 5)

█ Bee contends that the State failed to show that Mitchell's "out of court statement" fell within an exception listed in Rule 804(b).

When he became unavailable to testify at the second trial, Mitchell's former testimony became subject to the hearsay exception listed in Rule 804(b)(1). To fall within this exception, the former testimony must have been given at "another hearing of the same or different proceeding" at which Bee had an "opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." TEX.R. EVID. 804(b)(1). Because the second trial was a retrial of the first, the crime with which Bee was charged and the parties involved remained constant. Therefore, the two proceedings were essentially the same. *See Bryan v. State*, 837 S.W.2d 637, 644 (Tex.Crim.App.1992). Accordingly, Mitchell gave the testimony as a witness at "another hearing of the same proceeding." *See id.* Bee cross-examined Mitchell in the previous trial after the direct and redirect examinations. These cross-examinations were read to the jury in the

second trial. Because the crime charged remained the same, Bee held similar motive to develop Mitchell's testimony in both the first and second trials. *See id.* Because Bee cross-examined Mitchell in the first trial and held similar motive, the trial court did not abuse its discretion by finding that Mitchell's former testimony was admissible as an exception to the hearsay rule. *See* TEX.R. EVID. 804(b)(1).

### Written Statement (Issues 1, 2, & 5)

Bee contends that Mitchell's written statement was inadmissible hearsay because Bee's counsel did not cross-examine Mitchell about the written statement at the previous trial, the State failed to establish that the statement falls within the hearsay exclusion pursuant to Rule of Evidence 801(e)(1), and the State failed to show that Mitchell's written statement fit within a hearsay exception under Rule of Evidence 804. Bee contends that the trial court's error was not harmless because he did not have an opportunity to meaningfully cross-examine Mitchell regarding the written statement and because Mitchell was the State's sole eyewitness.

Bee's first argument fails because the record reflects that he did cross-examine Mitchell about the written statement at the previous trial. These cross-examinations were read to the jury at the second trial.

Bee's remaining arguments arise from an anomaly that the hearsay rules and interpretative case law do not provide clear direction to resolve. TEX.R. EVID. 804(b)(1) provides for the admission of former testimony when a witness is unavailable; however, it does not allow for the admission of a prior written statement offered previously to rehabilitate the former testimony.[3] Therefore, Bee is correct to assert that the written statement was not admissible under the former testimony exception provided in Rule 804(b)(1).

The trial court allowed the admission of the written statement under the hearsay exclusion provided in Rule 801(e)(1)(B). Prior to the adoption of the Texas Rules of

---

**3.** The Federal Rules of Evidence provide a "catchall" exception to the hearsay rules in the event a witness is unavailable. *See* FED.R.EVID. 804(b)(5). This exception allows for the introduction of a statement not specifically covered by

any of the exceptions listed in Rule 804, "but having equivalent circumstantial guarantees of trustworthiness." *Id.* This "catchall" exception was not adopted under the Texas Rules of Evidence.

Evidence, prior consistent statements of a witness were not admissible as substantive evidence; however, they were admissible to rehabilitate a witness who had been impeached by a charge of recent fabrication or improper motive. *See, e.g., Campbell v. State,* 718 S.W.2d 712, 715–17 (Tex.Crim. App.1986); *Grogan v. State,* 713 S.W.2d 705, 710 (Tex.App.—Dallas 1986, no pet.); *Ray v. State,* 649 S.W.2d 142, 145–46 (Tex. App.—Fort Worth 1983, pet. ref'd); *Jones v. State,* 649 S.W.2d 665, 667 (Tex.App.— Waco 1983, no pet.); 1 STEVEN GOODE, OLIN G. WELLBORN III & MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL §§ 613.5, 613.6 (Texas Practice, 2d ed.1993). Under this common law rule, when a prior consistent statement was admitted to rebut a charge of recent fabrication, it was not admitted to prove the truth of the matter asserted and, therefore, was not hearsay. *See Campbell,* 718 S.W.2d at 715–16. A logical deduction from this common-law rule would be that Mitchell's written statement was admissible simply because it does not fit the definition of hearsay; it was not offered to prove the truth of the matter asserted. Our analysis cannot end here, however, because this common law rule has been codified in the Texas Rules of Evidence 613 and 801, which preclude this reasoning. *See id.* at 716–17.

■ Under the rules of evidence, a prior consistent statement may be admitted to rebut a charge of recent fabrication or improper motive, both as substantive evidence to prove the truth of the matter asserted, as well as to rehabilitate the impeached witness. *See id.* at 716; 1 GOODE, et al., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 613.5. However, the common law rule and the rules of evidence require that the declarant of a prior consistent statement be available to testify and be subject to cross-examination regarding the previous written statement. *See Grogan,* 713 S.W.2d at 710; *Campbell,* 718 S.W.2d at 715–16; TEX.R. EVID. 613(c), 801(e)(1)(B). Rule 613, titled "Prior Statements of Witnesses; Impeachment and Support," discusses the necessary foundation to impeach a witness based on bias or interest. *See* TEX.R. EVID. 613(b).

In the event a party's witness is impeached on this basis, the "party shall be permitted to present evidence rebutting any evidence impeaching [the] said party's witnesses...." *Id.* However, Rule 613(c) limits this broad allowance and states that "[a] prior statement of a witness which is consistent with the testimony of the witness is inadmissible except as provided in Rule 801(e)(1)(B)." TEX.R. EVID. 613(c). Rule 613(c) narrows the window through which a prior consistent statement may be admitted by requiring such evidence to comply with the constraints provided in Rule 801(e)(1)(B), regardless of the purpose for which it is asserted. *See id.*

While Rule 801(e)(1)(B) provides for the introduction of a prior written statement to rebut a charge of recent fabrication or improper motive, it excludes such evidence from the hearsay rule only when "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement...." TEX.R. EVID. 801(e)(1)(B). Under a clear reading of this exclusion from the hearsay rule, Mitchell's written statement was properly admitted in the first trial as substantive evidence that Bee committed the crime and as rehabilitative evidence because Mitchell testified and was subject to cross-examination regarding the written statement. However, Rule 801(e)(1)(B) expressly does not provide for the admission of a written statement when the declarant is unavailable. *Id.* Herein lies the anomaly.

When a witness who testified at a previous trial was impeached on cross-examination, and was rehabilitated with the admission of a prior consistent written statement, the rules of evidence expressly provide for the admission of the former testimony at a subsequent trial; however, they do not expressly provide for the admission of any rehabilitative evidence admitted previously in the form of a written statement. *See* TEX.R. EVID. 804(b)(1). Because the evidence was properly admitted at the first trial under hearsay exclusions, logically, its reliability should not be at issue for its admission into the second trial when the impeaching former testimony is allowed. However, the rules of evidence and interpretive case law are silent on the admission of prior consistent written state-

ments for rehabilitation when the declarant witness is unavailable. *See* TEX.R. EVID. 613(c), 801(e)(1)(B), 804(b)(1).

■ While the basis of the trial court's admission of the written statement under Rule 801(e)(1)(B) in the second trial was erroneous, *see Owens v. State*, 916 S.W.2d 713, 717 (Tex.App.—Waco 1996, no pet.); *see also Ochs v. Martinez*, 789 S.W.2d 949, 958 (Tex.App.—San Antonio 1990, writ denied), this erroneous basis for admission of the written statement does not necessarily end our abuse of discretion review. Even when the court may give the wrong reason for its decision, if the decision of the trial court is correct on any theory of law which finds support in the evidence it will be sustained. *See McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997); *Draheim v. State*, 916 S.W.2d 593, 599 (Tex. App.—San Antonio 1996, pet. ref'd). Here, the record provides alternate means for proper admission of the written statement other than the one provided by the trial court.

■ Rule 806 of the Texas Rules of Evidence provides that "[w]hen a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." As admitted, the hearsay evidence stands testimonially as the equivalent of a statement made on the stand and is therefore subject to impeachment and rehabilitation. 3A WIGMORE ON EVIDENCE, § 884 (1972); *see also Appling v. State*, 904 S.W.2d 912, 916–17 (Tex.App.—Corpus Christi 1995, pet. ref'd); *Davis v. State*, 791 S.W.2d 308, 309–10 (Tex. App.—Corpus Christi 1990, pet. ref'd). The intent of Rule 806 is to permit impeachment and rehabilitation by any means that could be used if the declarant were a witness. HELEN D. WENDORF, DAVID A. SCHLUETER & ROBERT R. BARTON, TEXAS RULES OF EVIDENCE MANUAL VIII–131 (4th ed.1995); *accord Davis*, 791 S.W.2d at 310. Evidence offered under Rule 806 for impeachment or rehabilitation must be competent evidence for that purpose. *See Davis*, 791 S.W.2d at 310. Hearsay evidence of a prior out-of-court statement may not be admitted. *See id.*

While at first glance *Davis* appears to prohibit the admission of Mitchell's written statement through the investigating officer, it is distinguishable. In *Davis*, Davis sought to admit a letter from one of the State's non-testifying witness, Terry Riggs, which was written to Davis. *Id.* at 309. The letter stated, "I told that DA ... that I did it all and you had nothing to do with it." *Id.* Davis sought to offer this letter under Rule 806 as a prior inconsistent statement to impeach other incriminating statements made by Riggs that were admitted under a hearsay exception. *Id.* at 309–10. The court held that the letter was hearsay evidence of an out-of-court statement and was, therefore, incompetent evidence to show the existence of a prior inconsistent statement. *Id.* The letter was evidence showing that Riggs told Davis that he told the District Attorney that Davis was innocent. *Id.* However, the letter was not competent evidence that Riggs, in fact, told the District Attorney that Davis was innocent. *Id.* The court proposed that such competent evidence of a prior statement would "come from the District Attorney or from a written communication from Riggs to the District Attorney." *Id.* at 310.

The court's proposed competent evidence, i.e. written communication, infers the fact situation at hand. Mitchell's written statement was competent evidence that Mitchell told police that Bee committed the crime prior to any alleged motive to fabricate arose. The statement was dated and was written under oath. The statement was given to police during the investigation of the crime. The statement was consistent with Mitchell's testimony. The prior consistent written statement was therefore competent evidence to rehabilitate Mitchell following impeachment.

At the second trial, the trial court admitted Mitchell's former testimony as substantive evidence that Bee committed the crime charged. As discussed, this hearsay evidence was properly admitted under Rule 804(b)(1) as an exception to the hearsay rule because Mitchell was unavailable. Under

Rule 806, this former testimony, as hearsay evidence, stood testimonially as if Mitchell had testified at the second trial. *See* WIG- MORE § 884 (1972); *Appling,* 904 S.W.2d at 916–17. As such, the former testimony was subject to impeachment and was, in fact, impeached therein through the reading of the cross-examination. As an impeached wit- ness, the State was entitled to rehabilitate Mitchell by admission of a prior consistent statement offered for that purpose, but not as substantive evidence to prove the truth of the matter asserted. *See* TEX.R. EVID. 806, 801(e)(1)(B). Because the cross-examination, redirect examination, and recross-examina- tion of Mitchell from the previous trial were also read to the jury, this testimony refer- enced the written statement and alluded to its admission in the previous trial. This tes- timony also stated that the written statement was consistent with Mitchell's testimony. However, the reading of the former testimo- ny obviously did not admit the written state- ment as evidence that it was made and did not contain the contents of the written state- ment to prove that it was, in fact, consistent with Mitchell's testimony. To do this in the first trial, the State admitted the written statement through its declarant, Mitchell, un- der Rule 801(e)(1)(B). To do so at the sec- ond trial, the State was required to call a third party to testify that the prior consistent statement was made and to admit it into evidence. This admission was consistent with the intent of Rule 806 and was proper as inferred in *Davis. See* WENDORF, et al., TEXAS RULES OF EVIDENCE MANUAL VIII–131; *Davis,* 791 S.W.2d at 310.

If Mitchell had testified, his written state- ment would have been admissible under Rule 801(e)(1)(B) to rehabilitate any impeachment based on a charge of recent fabrication or improper motive to lie. Therefore, Mitchell's written statement was admissible under Rule 806 for rehabilitative purposes only. The written statement was offered to rehabilitate such impeachment presented to the jury through the reading of the cross-examina- tion, not to assert the truth of the matter stated therein. The trial court's admission of the written statement, though admitted by improper basis under Rule 801(e)(1)(B), was not an abuse of discretion because the admis-

sion of the evidence was proper under Rule 806. The record supports the trial court's ruling. Bee's conviction is therefore af- firmed.