

# NUMBER 13-23-00443-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ALEX ANTHONY CARDENAS,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF CALHOUN COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Longoria, Tijerina, and Peña**
**Memorandum Opinion by Justice Tijerina**

Appellant Alex Anthony Cardenas challenges his conviction for sexual assault of a child. TEX. PENAL CODE ANN. § 22.011(a)(2)(A). Appellant was sentenced to forty years' confinement. By eight issues, appellant contends that (1) the evidence is insufficient to support the conviction (issues one and two); (2) the trial court improperly assessed court costs, restitution, and a fine; (3) the judgment is void; (4) the trial court improperly denied

his request for a mistrial; (5) the trial court impermissibly admitted extraneous offense evidence; (6) his trial counsel rendered ineffective assistance; and (7) the trial court improperly excluded testimony. We affirm as modified.

## I.   SUFFICIENCY OF THE EVIDENCE

By his first and second issues, appellant contends that the evidence is insufficient to support his conviction. Specifically, appellant first argues that sexual assault of a child and indecency with a child have the same elements; therefore, because the jury acquitted him of indecency with a child by contact, the jury's finding that he penetrated the child's sexual organ with his fingers is not supported by sufficient evidence. Next, appellant argues that the State failed to produce more than a scintilla of evidence that he acted intentionally or knowingly when he penetrated the child's sexual organ.

## A.   Standard of Review and Applicable Law

In a sufficiency review, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Sufficient evidence exists if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

2

We review the evidence applying the hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements "as modified by the indictment." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). A person commits the offense of sexual assault of a child if the person intentionally or knowingly caused the penetration of the sexual organ of a child, who was then and there younger than seventeen years of age, by any means. TEX. PENAL CODE ANN. § 22.011(a)(2)(A).

Lastly, when "determining the legal sufficiency of the evidence to show an appellant's intent," even where "the record supports conflicting inferences, we 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'" *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd) (quoting *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct

3

when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware his conduct is reasonably certain to cause the result." *Id.*

Because the accused's mental state is usually "[c]oncealed within his own mind, intent and knowledge are most often proven through circumstantial evidence surrounding the crime." *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). A jury may infer knowledge or intent from any facts that tend to prove their existence, including the acts, words, and conduct of the accused; the method of committing the crime; and the nature of the wounds inflicted. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

**B.      Lesser-Included Offense**

The jury was instructed that it could only find appellant guilty of sexual assault of a child if it acquitted him of the lesser-included offense of indecency with a child by contact. The jury followed the trial court's instruction—convicting appellant of sexual assault of a child and acquitting him of indecency with a child. In his first issue, appellant argues that because the jury acquitted him of the lesser-included offense, we must now acquit him of the greater offense.

However, the hypothetically correct jury charge would have either elected which offense appellant committed "or, in the alternative, received a submission of the offense of indecency with a child to the jury only as a lesser-included alternative to the offense of aggravated sexual assault." *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); *see Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240. Accordingly, we conclude that pursuant to a hypothetically correct jury charge, the jury should have been instructed

4

to find appellant guilty of the lesser-included offense only if they found him not guilty of the greater offense. *See Ochoa*, 982 S.W.2d at 908. Moreover, "the law does not bar inconsistent verdicts." *Guthrie-Nail v. State*, 506 S.W.3d 1, 6 (Tex. Crim. App. 2015). "Where a multi-count verdict appears inconsistent, our inquiry is limited to a determination of whether the evidence is legally sufficient to support the count on which a conviction is returned." *Hernandez v. State*, 556 S.W.3d 308, 321 (Tex. Crim. App. 2017) (op. on reh'g) (Richardson, J., concurring); *see also Harrell v. State*, No. 03-18-00391-CR, 2020 WL 2786678, at *5 (Tex. App.—Austin May 28, 2020, pet. ref'd) (mem. op., not designated for publication) ("Even when an inconsistent verdict might have been the result of compromise or mistake, the verdict should not be upset by appellate speculation or inquiry into such matters."). Thus, we will review the evidence as to the convicted offense of sexual assault of a child. *See Ochoa*, 982 S.W.2d at 908; *Hernandez*, 556 S.W.3d at 321; *see also Harrell*, 2020 WL 2786678, at *5. We overrule appellant's first issue.

## C.     The Elements of Sexual Assault of a Child

By his second issue, appellant argues that there is no evidence that he intentionally or knowingly penetrated L.A.'s sexual organ with his fingers.[1]

L.A. testified that when she was fifteen years old, she went on a weekend trip to Port O'Connor, Texas on April 30, 2019, with appellant and his niece, N.M., who is L.A.'s friend. According to L.A., while at the vacation house, the group sat in a car outside to listen to music and drink alcohol. L.A. said her friend left her alone with appellant, and

---

[1] We refer to L.A. by an alias in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

5

appellant "came around [to her] side of the vehicle," opened the door, "and he had put his hand on [the skin of her inner] thigh and started kissing [her], and [she] pushed him away and told him no." L.A. testified that appellant then went back into the house, and her friend returned to the car. L.A. stated that later that evening, the girls decided to go inside; however, her friend had to help her walk because L.A. "was very, very drunk." L.A. explained, "[my friend] had laid me on the bed that we had decided we were going to sleep on earlier" and said she was going to the bathroom. L.A. testified,

> When she was in the bathroom, [appellant] had walked up to the—I was sitting on the end of the bed, and he had walked up to me, and, again, put his hands on my leg, my inner thigh, and then he started kissing me [on the lips]. And that's whenever his hands went inside my pants, and I started telling him that I was on my period and to stop, and nothing seemed to stop him until [my friend] came out.

The State asked, "When his hand went inside of your shorts, where did it go?" L.A. replied, "He had touched my vagina with his fingers." The State asked, "And when he touched your vagina with his fingers, did he touch on the outside of your vagina, or did he touch on the inside of your vagina?" L.A. responded, "It was the outside at first, but it had moved to the inside." L.A. explained that appellant's fingers "stayed still. They just went inside. . . ." L.A. stated, "[Appellant] was saying [']I want you.[']" The State asked, "At that moment when he had his hand in your vagina . . . did you feel like he was trying to start some sort of sexual interaction with you?" L.A. replied, "Yes, ma'am." According to L.A., her friend returned to the room, and appellant "was acting like nothing had ever happened."

L.A.'s testimony as to appellant's conduct was sufficient for a reasonable jury to infer the requisite level of intent. *See Smith*, 965 S.W.2d at 518; *Hart*, 89 S.W.3d at 64;

6

*see also Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi-Edinburg 2008, no pet.) ("The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault."). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to support appellant's conviction. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. We overrule appellant's second issue.

## II. ABILITY-TO-PAY COURT COSTS AND FINES

By his third issue, appellant contends "that the judgment of the trial court be reversed, and this cause remanded for a new trial" because the trial court failed to conduct an inquiry on the record regarding his ability to pay court costs, a fine, and restitution.

Article 42.15(a-1) requires the trial court to ask on the record whether a defendant can immediately pay fines and costs. TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1)(1); *see also Suniga v. State*, No. 13-23-00586-CR, 2024 WL 3307314, at *2 (Tex. App.—Corpus Christi–Edinburg July 5, 2024, no pet.) (mem. op., not designated for publication). If the trial court determines that the defendant is unable to pay the fees and court costs, it can, among other things, order that the payments "be paid at some later date." TEX. CODE CRIM. PROC. ANN. art 42.15(a-1)(1). The failure to conduct an ability-to-pay inquiry constitutes non-constitutional error, and unless the error affects the defendant's substantial rights, we must disregard such error. TEX. R. APP. P. 44.2(b); *see also Suniga*, 2024 WL 3307314, at *3. A defendant's substantial right has been affected if the error had an injurious effect or influence on the verdict. *See Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023) (citing *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App.

7

2008)).

Our sister court in *Sloan v. State*, addressed this issue, and it concluded that, even assuming error, the trial court's failure to conduct an ability-to-pay inquiry on the record did not harm the appellant. 676 S.W.3d 240, 242 (Tex. App.—Tyler 2023, no pet.). The *Sloan* court stated that the failure to conduct the inquiry had not "prevent[ed] the proper presentation of the case to [the appellate] court and the trial court can correct its action or failure to act." *Id.* at 241 (citing TEX. R. APP. P. 44.4(a)). The *Sloan* court further determined that it could imply that the trial court had conducted an inquiry of the appellant's ability to pay from the record because the judgment required the appellant to pay his fines and court costs "[u]pon release from confinement." *See id.* The *Sloan* court held that the outcome of such an ability-to-pay inquiry was implicit from the record; thus, it would be "gratuitous" to remand the cause. *Id.*

Here, the trial court ordered that appellant pay the fine, restitution, and court costs "upon release of confinement." *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1)(1). Thus, by deferring payment until appellant is released, it is apparent from the record that the trial court determined that appellant was unable to pay when it sentenced appellant. *See Sloan*, 676 S.W.3d at 242; *see also Hanson v. State*, No. 13-24-00022-CR, 2024 WL 3533413, at *3 (Tex. App.—Corpus Christi–Edinburg July 25, 2024, no pet.) (mem. op., not designated for publication) (finding *Sloan* instructive); *Suniga*, 2024 WL 3307314, at *3 (same); *Rios v. State*, No. 13-23-00590-CR, 2024 WL 3708954, at *4 (Tex. App.— Corpus Christi–Edinburg Aug. 8, 2024, no pet. h.) (mem. op., not designated for publication) (applying the reasoning in *Sloan* and stating that a remand for an "on the

8

record" ability-to-pay inquiry would be "gratuitous"). Therefore, remand for an ability-to-pay inquiry on the record would amount to an unnecessary exercise and a waste of judicial resources.[2] *See Sloan*, 676 S.W.3d at 242; *see also Suniga*, 2024 WL 3307314, at *3. Accordingly, appellant has not demonstrated that the alleged error has affected his substantial rights. *See* TEX. R. APP. P. 44.2(b); *Sloan*, 676 S.W.3d at 242; *see also Suniga*, 2024 WL 3307314, at *3; *Sanders v. State*, No. 05-22-01376-CR, 2024 WL 725529, at *9 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op., not designated for publication) (concluding that appellant failed to show his substantial rights were affected by the trial court's lack of an express ability-to-pay inquiry because it was apparent from the record that it had determined he could not pay); *Gilmer v. State*, No. 12-23-00054-CV, 2023 WL 8103957, at *4 (Tex. App.—Tyler Nov. 21, 2023, no pet.) (mem. op., not designated for publication) (explaining that the trial court did not err in denying appellant's motion to rescind its order to withdraw funds from his inmate account when it failed to conduct an inability-to-pay inquiry "[b]ecause the court determined Gilmer was unable to pay any part of the fine immediately, [and thus] Gilmer fails to show that his substantial rights were affected by the omission of an ability-to-pay inquiry"). We overrule appellant's third issue.

### III. VOID JUDGMENT

By his fourth issue, appellant contends that the judgment is void because the trial court orally pronounced that the sentence would be forty years and specifically stated that

---

[2] Appellant cites no authority, and we find none, requiring reversal of the judgment because the trial court failed to conduct an ability-to-pay inquiry.

no fine would be imposed. Therefore, appellant requests that we reverse the judgment.

"A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). Here, at sentencing, the trial court orally pronounced that it would not impose a fine because none had been requested. Therefore, the judgment does not conform with the trial court's oral pronouncement. However, "[t]he solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced." *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). Appellant cites no authority, and we find none, that supports a conclusion that a judgment is void when it does not conform to the trial court's oral pronouncement. *See id.* Therefore, we reform the judgment to reflect that there is no fine imposed. We overrule appellant's fourth issue.

### IV.   MISTRIAL

By his fifth issue, appellant contends that the trial court erred in denying his request for a mistrial during voir dire. Specifically, appellant argues that the State violated his presumption of innocence when it asked the jury what happens if a child victim fails to testify at trial.

### A.   Standard of Review and Applicable Law

We review a denial of a motion for mistrial for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Mistrials are appropriate only when "highly prejudicial and incurable

10

errors" occur. *Wood*, 18 S.W.3d at 648. Thus, the trial court is required to declare a mistrial only when the error is "[c]learly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (quoting *Gonzales v. State*, 685 S.W.2d 47, 48–9 (Tex. Crim. App. 1985)). "When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial." *Dancer v. State*, 253 S.W.3d 368, 372 (Tex. App.—Fort Worth 2008, pet. ref'd) (per curiam). In most cases, any harm associated with an improper question or comment, including a question posed at voir dire can be cured. *Id.* at 372–73; *Hawkins*, 135 S.W.3d at 84. Furthermore, a trial court's prompt instruction to disregard will cure error associated with an improper question, answer, or argument. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Finally, we must presume that the jury followed a trial court's instructions. *Moore v. State*, 983 S.W.2d 15, 19 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)). "This presumption is refutable, but the appellant must rebut the presumption by pointing to evidence in the record indicating that the jury failed to follow the trial court's instructions." *Pena*, 554 S.W.3d at 251.

## B.    Pertinent Facts

During voir dire, the State asked a venireperson, "Do all adults react the same to embarrassing situations?" The venireperson replied, "No." The State then stated, "Right,

okay. So kids, for the most part, are required to testify. What happens if they don't?" Appellant's trial counsel asked to approach the bench, and a discussion occurred. Appellant's trial counsel argued that the State was "getting into argument at this point," "not explaining to the jury," making a "completely inappropriate" statement, and attempting to "taint the jury." Appellant's trial counsel objected and requested a curative instruction and a mistrial. The trial court asked appellant's trial counsel to clarify his objection, and appellant then complained that the State saying, "the children are required to testify, what if they can't or won't do it. Well, that goes to the weight of the evidence which should be cured by an instruction." Appellant's trial counsel stated, "And, secondly, the real damaging one . . . that's partially damaging but does that mean nothing happened. . . . So the presumption here is that something must've happened. . . ." Appellant's trial counsel claimed that by making the complained-of statement, the State suggested that appellant is "guilty until proven innocent and now we have burden shifting and also violation of presumption of innocence. . . ." The State replied that it had not intended "to taint the jury," and it "just want[ed] to make sure that [the venire understood] that the State can't meet its burden without the child testifying, and some people have a real problem with children who are required to testify." The trial court then told the parties that it would "give a curative instruction that anything that occurs at the bench or any[thing] on objections that either side needs to make are part of the process. They're not to consider it or be perturbed by it because it's what each said has to do to affect their case." Appellant's trial counsel stated, "I will ask for a curative instruction about does that mean nothing happened, and the Court can deny it, so that's what I am asking for part of that."

12

The trial court replied that it would "restate that the burden is on the State and that anybody accused is innocent until proven guilty." The trial court then instructed the venire as follows:

> Ladies and Gentlemen, at this time I need to remind the panel as a whole that any person that is accused of a crime is innocent until proven guilty by the State. That is the State's burden alone.
>
> Additionally, whenever—I know there's some disgruntled reactions to objections that are being lodged today, but each of the sides, the attorneys for those sides have a job to do, and so when there are legal issues that are brought to the attention of the Court, those are not things for a jury panel to handle or decide. That is something that the Court has to decide, and so in order for each side to do their job effectively and correctly, there are just legal issues that have to be brought to the attention of the Court at times for a ruling from me. And so it's just a part of the process. I'll ask you to be tolerant and patient with that. You know, we're dealing with constitutional rights, and it's important that everything is followed as best as we can to the letter of the law, so I am going to ask that y'all *disregard the last question*, and we are going to move ahead with voir dire in just a moment.

(Emphasis added).

Appellant's trial counsel approached the bench and requested a mistrial, which the trial court denied.

> The trial court's jury charge stated,
>
> All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. . . . The presumption of innocence alone is sufficient to acquit the Defendant, unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all of the evidence in the case. The prosecution has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the Defendant.

## C.    Analysis

13

Here, the trial court instructed the venire panel to disregard the State's question, "What happens if [children] don't [testify]?" Additionally, the trial court instructed that "any person that is accused of a crime is innocent until proven guilty by the State. That is the State's burden alone." Finally, in its charge, the trial court instructed that "All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt" and "The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial."

The venireperson did not answer the complained-of question, and the State made no further mention of the topic. Thus, the complained-of question was brief and insignificant. *See Pena*, 554 S.W.3d at 251. Additionally, as stated earlier, the trial court instructed the jury to disregard the question. The trial court also instructed the jury that the State had the burden to prove each element of the offense as appellant is presumed innocent until proven guilty during voir dire and in the jury charge. Absent evidence that the jury failed to follow the trial court's instructions, we must presume that the jurors followed them, as there is nothing in the record indicating that they had not. *See Moore*, 983 S.W.2d at 19; *Pena*, 554 S.W.3d at 251. Appellant points to no evidence in the record demonstrating that the jury failed to follow the trial court's instruction and we have found none. *See Moore*, 983 S.W.2d at 19; *Pena*, 554 S.W.3d at 251. The trial court sufficiently ameliorated any potential harm in the State's question by instructing the panel to disregard the question and instructing the jury regarding the State's burden of proof. *See Pena*, 554 S.W.3d at 251. Moreover, L.A. testified as to appellant's acts; therefore, the

14

situation as proposed by the State during voir dire did not occur. Accordingly, we conclude that the trial court did not abuse its discretion by denying appellant's motion for a mistrial on that basis. *See Hawkins*, 135 S.W.3d at 77; *Wood*, 18 S.W.3d at 648. We overrule appellant's fifth issue.

## V.      EXTRANEOUS EVIDENCE

By his sixth issue, appellant contends that the trial court abused its discretion by admitting evidence that after the offense occurred, he sent text messages inviting L.A. to Las Vegas, Nevada. Appellant argues this evidence was inadmissible hearsay, and violated Texas Rules of Evidence 404(b), 403, 401, and the Confrontation Clause.

### A.      Pertinent Facts

Prior to L.A.'s testimony, outside the jury's presence, appellant's trial counsel requested "the Court to issue a limine" order regarding L.A.'s testimony about an incident wherein her brother "supposedly threw a rock through [appellant's] windshield in the idea that he was mad that he heard that [L.A.] had been inappropriately touched or something to that effect, so I am asking the Court to limine that. . . ." The State verified that it would also introduce evidence that appellant sent text messages to L.A., which led to the rock-throwing incident at the pool. Appellant's trial counsel replied he wished to "supplement [the] limine request" regarding appellant's text messages because the State did not "have the text messages, so this is a—I mean, this is a 404(b), but it's also—it's an extraneous conduct act" and was not "relevant to this—whether or not the actual sexual assault occurred." Appellant's trial counsel said, "[W]e're getting into allegations outside of the alleged sexual assault and indecency, talking about subsequently there's an invitation

15

supposedly with no verifying text messages," and "He's going to be tried for an offense for which he's not charged, but, secondly, that doesn't prove or not probative of whether something that happened supposedly on a text message supposedly in Victoria . . . proved something happened several months prior in a separate county 80 miles away." Appellant's trial counsel further objected that the complained-of text messages constituted hearsay, the prejudicial value was "far outweighed" by any probative value, the evidence would confuse the jury, and he was "unable to confront those actual text messages." The trial court found "that the probative value of this does outweigh the prejudicial value," and it denied the motion in limine. Appellant's trial counsel requested a running objection.

L.A. testified regarding the allegations. L.A. stated that in June 2019, she was at a swimming pool when she received messages from appellant inviting her to fly to Las Vegas with him. According to L.A., appellant discouraged her from telling her parents about his offer. L.A. said that she showed the text messages to her twin brother, C.A., who was "not happy" when he read them. According to L.A., C.A. pretended to be L.A. and replied to appellant's text messages from L.A.'s phone. Shortly thereafter, appellant arrived at the pool, and L.A. did not interact with him because she was "very nervous." L.A. stated that her brother talked with appellant, and the police eventually arrived at the pool. When the police arrived, L.A. and her mother, who also arrived at the pool, spoke to the police. L.A. reported her allegations to the police.

C.A. testified that when he was at the swimming pool with L.A., he saw some text messages to L.A. from appellant stating that appellant wanted to "pick up [L.A.] and take

16

her to Vegas." According to C.A., he then "told [appellant] to come over," and when appellant arrived at the pool, C.A. confronted him. C.A. stated that appellant was in his car, and "[w]hen he pulled off," C.A. "threw a rock through his window" because "he came to pick up my 15-year-old sister to fly her to Vegas. . . ." The police arrived at the pool. C.A. did not testify further.

## B.    Standard of Review

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Id.* "[W]e will not conclude an error is harmful unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Pena*, 554 S.W.3d at 248.

## C.    Rules 401, 404(b), and 403

First, citing Rule 404(b), appellant argues that the State introduced evidence of his text messages to L.A. as "evidence of [his] character or character to prove that on a particular occasion [he] acted in accordance with the character or trait" and the text messages "did not meet, and neither the State nor the trial court offered, an[] exception such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Appellant argues that the trial court improperly admitted the extraneous offense of solicitation of a minor via text. Relatedly, appellant next argues that evidence that appellant invited L.A. to Las Vegas "does not pertain to any element" of the charged offenses and "was an inflammatory allegation that had no

17

probative value except to impugn [appellant's] character before the jury." Finally, appellant argues that evidence of the text messages was irrelevant pursuant to Rule 401 because "they are unsubstantiated allegations sought to be introduced through hearsay, they are not relevant and should have been excluded."

### 1.     Standard of Review and Applicable Law

Pursuant to Rule 401, evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." TEX. R. EVID. 401. Rule 404(b) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* R. 404(b). Article 38.37 is an exception to Rule 404(b)'s prohibition of extraneous offense evidence. TEX. CODE CRIM. PROC. art. 38.37(b). It states, that

> evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state mind of the defendant and the child; and the previous and subsequent relationship between the defendant and the child.

*Id.* Nonetheless, the trial court must still conduct a balancing test under Rule 403 before such evidence is admitted, and it "may exclude the evidence if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.) (citing TEX. R. EVID. 403).

### 2.     Discussion

Here, the State had to prove beyond a reasonable doubt that appellant intentionally

18

or knowingly caused the penetration of the sexual organ of L.A. with his fingers. TEX. PENAL CODE ANN. § 22.011(a)(2)(A). Pursuant to article 38.37, the complained-of evidence is relevant and admissible for its bearing on appellant's state of mind when he committed the offense and the subsequent relationship he had with L.A. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37(b). Accordingly, we conclude that the trial court did not abuse its discretion when it overruled appellant's objections based on Rules 401 and 404(b). TEX. R. EVID. 401, 404(b).

Nonetheless, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403.

> "Probative value" is the measure of "how strongly [the evidence] serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). When the proponent has other compelling evidence to establish the fact or proposition that the challenged evidence goes to prove, the probative value of the contested evidence will weigh far less in the probative versus prejudicial balance. *Id.*
>
> "Unfair prejudice" refers to a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641. "[C]onfusion of the issues" refers to "a tendency to confuse or distract the jury from the main issues in the case." *Id.* "[M]isleading the jury" refers to "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." *Id.*

*Belcher*, 474 S.W.3d at 847–48.

"Rule 403 favors the admission of relevant evidence and carries a presumption

that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2011). Evidence is prejudicial when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 applies. *Id.* At trial, appellant's niece denied that she had left L.A. alone at any time during the weekend trip, and appellant's defensive strategy was to attack L.A.'s credibility. Accordingly, evidence that appellant wished to take L.A. to Las Vegas without telling her parents is relevant to appellant's state of mind as demonstrative of consciousness of guilt and directly relevant to rebut appellant's defensive theory. *See Smith*, 965 S.W.2d at 518; *Hart*, 89 S.W.3d at 64. We overrule appellant's sixth issue in this regard.

## D. Hearsay

Next, appellant argues that evidence that he sent L.A. text messages inviting her to Las Vegas was inadmissible because it constituted hearsay.

"Hearsay" is a statement "the declarant does not make while testifying at the current trial" and is offered "in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). The rule against hearsay has many exceptions including a party's statements which are admissible pursuant to Rule 801(e)(2)(A) of the Texas Rules of Evidence. *Id.* R. 801(e)(2)(A). Rule 801(e)(2)(A) "provides that a statement is not hearsay if it is offered against a party to the proceeding and is that party's own statement." *Templeton v. State*, 629 S.W.3d 616, 629–30 (Tex. App.—Eastland 2021, no pet.) (citing TEX. R. EVID. 801(e)(2)(A)). "Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."

20

*McNair v. State*, 75 S.W.3d 69, 72 (Tex. App.—San Antonio 2002, no pet.) (internal quotations omitted) (citing *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (en banc)).

Here, evidence was presented that appellant uttered these challenged statements in text messages to L.A. and that these statements were offered and used against appellant by his opposing party, the State. Therefore, because appellant's statements qualified as opposing party's statements under Rule 801(e)(2)(A), they are not hearsay by definition and admissible. *See Templeton*, 629 S.W.3d at 629 ("Unlike statements against interest, a party's admission need not be against the interests of the party when made in order to be admissible."). In addition, the evidence shows that appellant kissed L.A. while she was intoxicated and put his fingers in her vagina against her will while alone with her on a weekend vacation. The evidence further showed that when he sexually assaulted L.A., appellant said, "I want you." Then appellant invited L.A. to Las Vegas and told her not to tell her parents about his invitation. Thus, the trial court could have reasonably inferred from appellant's statements in the text messages that he intended to take L.A. to Las Vegas to continue his sexual abuse. *See* Tex. Penal. Code Ann. § 33.021 (setting out that a person commits the offense of solicitation of a minor if by text messages, he "knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person"); *Davis v. State*, 177 S.W.3d 355, 361 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("A statement, to be considered as an admission, does not necessarily have to admit an element of an offense.").

Moreover, as previously set out, article 38.37 allows

> evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense . . . for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37(b). Thus, evidence that appellant wanted to take L.A. to Las Vegas without her parents' knowledge presumably to continue the sexual abuse was also admissible pursuant to article 38.37(b). *See id.*; *see also* TEX. PENAL. CODE ANN. § 33.021. Accordingly, we cannot conclude that the trial court abused its discretion when it determined that appellant's statements were admissible. *See McNair v. State*, 75 S.W.3d 69, 71 (Tex. App.—San Antonio 2002, no pet.) ("[I]f the decision of the trial court is correct on any theory of law which finds support in the evidence it will be sustained." (internal quotations omitted) (quoting *Bee v. State*, 974 S.W.2d 184, 187 (Tex. App. —San Antonio 1998, no pet.)). We overrule appellant's sixth issue on this basis.

## E.    Confrontation Clause

Next, appellant argues that he was unable "to confront his accusers . . . as neither [he] nor his counsel were able to review the admitted evidence of the texts regarding Las Vegas." This is the extent of appellant's argument. Although he sets out the applicable confrontation clause law, he does not provide a clear and concise argument applying the law to the facts of this case; therefore, this argument is waived due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i). We overrule appellant's sixth issue on all bases.

## VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his seventh issue, appellant contends that his trial counsel rendered ineffective

assistance by failing to object to evidence of his text messages to L.A. based on authentication and the best evidence rule. This is the extent of his argument. This issue is inadequately briefed and is waived. *See id.* We overrule it.

## VII.   EXCLUDED TESTIMONY

By his eighth issue, appellant contends that the trial court improperly excluded testimony concerning L.A.'s out-of-court statements.

At trial, appellant's trial counsel argued that N.M.'s testimony concerning out-of-court statements previously made by L.A. were admissible as statements by opponents. *See* TEX. R. EVID. 801(e)(2). The State correctly countered that L.A. was not a party, so Rule 801(e)(2) did not apply. *See Davis*, 177 S.W.3d at 362 ("We now conclude that the complainant in a criminal prosecution is not a party within the meaning of rule 801(e)(2). . . ."); *Logan v. State*, 71 S.W.3d 865, 869 (Tex. App.—Fort Worth 2002, pet. ref'd) ("We hold that a statement by a victim or complainant in a criminal case is not admissible under rule 801(e)(2) as an admission by a party opponent. To the extent that our previous opinion in *L.M.W.* holds to the contrary, it is overruled."); *Halstead v. State*, 891 S.W.2d 11, 12 n.1 (Tex. App.—Austin 1994, no pet.) (concluding "that the complainant in a criminal prosecution is not a party within the meaning of Rule 801(e)(2)"); *see also Moreno v. State*, No. 13-03-649-CR, 2005 WL 1413491, at *3 (Tex. App.—Corpus Christi–Edinburg May 26, 2005, pet. ref'd) (mem. op., not designated for publication) ("However, party opponents in a criminal trial are the State and the defendants, not the victim."). Thus, we overrule appellant's eighth issue.[3]

---

[3] To the extent that appellant may also argue on appeal that L.A.'s out-of-court statements were admissible as statements against interest, he did not make that argument in the trial court. Thus, it is not

23

**VIII. CONCLUSION**

We affirm the trial court's judgment as modified.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
19th day of December, 2024.

---

preserved. *See* TEX. R. APP. P. 33.1.